Next case on the oral argument calendar, United States v. Oakland Cannabis and Fires Cooperative. And before I start, I want to explain to the parties something that probably isn't apparent from the record and which you may be wondering about. Under our procedures in the Ninth Circuit, if a case is heard previously by a panel, it is offered to that panel again, and the panel will decide whether to accept it as a comeback case or not. And in this case, of course, the prior panel indicated in its opinion that it was retaining jurisdiction. But I want to let you all know that the panel was offered the opportunity under the rules to accept it as a comeback case and declined it, and therefore there was a random draw for a new panel. So if you have any questions, and I gather by some of the filings there were some questions about that, that's why that occurred. So you may proceed. Thank you, Your Honor. Gerald Ullman appearing with Annette Carnegie, Heather Moser, and Robert Raich on behalf of the defendants and the appellants in this case. And Mr. Greg Anton is also with us representing the Marin Alliance for Medicinal Marijuana. He's available to answer any questions the Court may have about the rational basis argument. I'm going to be primarily addressing the immunity argument, but of course can respond to other questions that you might have about the case. I'd like to reserve three minutes for rebuttal. Certainly. Oakland Ordinance Number 12076, enacted in 1998, established a city-operated medicinal cannabis distribution program. And the defendant, Oakland Cannabis Buyers Cooperative, and its director, Jeffrey Jones, were designated as the authorized medical cannabis provider association to enforce the program. The ordinance provided that for this purpose they were officers of the city of Oakland. The city was explicitly relying upon Section 885D of the Federal Controlled Substances Act, which contains a broad grant of immunity from civil or criminal liability under the act to any duly authorized officer of any state or subdivision thereof who shall be lawfully engaged in the enforcement of any law or municipal ordinance relating to controlled substances. Today we ask nothing more than that this Court apply the plain, unambiguous language of that statute. There is no dispute in this case that the defendants are duly authorized officers of the city of Oakland, a subdivision of the state of California. We should note that in enacting this immunity provision, Congress used the broadest possible terms by conferring immunity on all state or local officers, not just law enforcement officers. And Congress knew the difference because the term law enforcement officer does appear elsewhere in the Controlled Substances Act, but the immunity clause applies to all officers. And likewise, there is no dispute here that California's Compassionate Use Act, California's Medical Marijuana Program Law, and Oakland's Ordinance Number 12076 are all laws or municipal ordinances related to controlled substances. And here we should note that unlike the immunity for federal officers under 885D who must be engaged in the enforcement of the Controlled Substances Act itself, state officers need only be enforcing a law or ordinance relating to controlled substances. And there is no requirement that that law be consistent with the Controlled Substances Act. The primary problem you have is Rosenthal. How do you distinguish that case and how – go ahead. In Rosenthal, the court simply found that the defendant was not engaged in the enforcement of state law because his activity of simply cultivating marijuana did not compel anyone to do anything or refrain from doing anything. The court defined enforcement as to mean compelling compliance with the law. And the same cannot be said with respect to these defendants. The Oakland Cannabis Buyers Cooperative is the designated medical cannabis provider, and the ordinance provides that any designated medical cannabis provider shall enforce the provisions of this subchapter, including enforcing its purpose of ensuring that seriously ill Californians have the right to obtain and use marijuana for medical purposes. Now, in carrying out this mandate, the defendants certainly are compelling others to do or not do a number of things. First of all, they have to determine whether patients are qualified, whether they have the requisite physician's authorization to use medicinal marijuana. They have to determine if they have the requisite identification card to properly identify themselves as patients or turn them away if they don't. They must determine whether others may be primary caregivers who are designated as the person to give primary care to the user of the medicinal cannabis. And finally, they must enforce limits on the quantity of medical cannabis that a patient may possess or verify a doctor's recommendation for a greater quantity. These are all duties to compel compliance with the law. Now, the Rosenthal Court also expressed its agreement with the district court's conclusion that Rosenthal's interpretation of the immunity provision contradicts the purpose of the Controlled Substances Act. And with all due respect, we submit that the district court's conclusion was basically flawed. There is no contradiction between the literal application of the language of 885D and the purpose of the Controlled Substances Act. The Controlled Substances Act did not purport to displace the traditional role of the states in protecting the health and safety of their citizens. The breadth of the immunity clause coupled with the anti-pronunciation clause of Section 903 make it clear that states were free to make their own determination of what limits should be placed on controlled substances and that their officers would be immune in enforcing those determinations. I offered the court supplemental authority this morning, a case that just came down from the Fourth District Court of Appeal in California last week, presenting the question whether police officers who are required by California law to return medicinal marijuana that has been unlawfully seized from a patient and give it back to the patient. And the police officers were arguing, we can't do that. We're violating the federal law. We're delivering controlled substances. And the court said, you're not violating the federal law. You have immunity under the federal law. The federal law says as long as you're enforcing California law related to controlled substances, you're not subject to any civil or criminal liability under the federal law. And the same thing is true here. And, in fact, the Garden Grove Court noted that there's really no contradiction between the federal law and the state law. And, in fact, they cited and relied on Ninth Circuit authority. They said, our conclusion in this regard finds support in the case of Highland v. Fukuda. There the Ninth Circuit ruled a Hawaii law allowing felons to carry guns was not preempted by federal law prohibiting such conduct. The court reasoned state law has no impact on the legality of the same act under federal law. Simply put, Congress has chosen to prohibit an act which Hawaii has chosen not to prohibit. There is no conflict between the federal law and the state law. And the same thing can be said here. There's no conflict. The federal law says you can't possess or distribute marijuana for any purpose. The California law says you can possess and you can distribute it within a collective enterprise for medicinal purposes. So both laws can stand without any contradiction. The state officers don't have to enforce the federal law. Federal officers are not impacted by the state law at all. So when a state officer is enforcing the state law, even though that violates the federal law, the immunity clause applies. And we say you have no criminal or civil liability because you're lawfully engaged in enforcing a state law relating to controlled substances. The language is absolutely clear. There's no question about it. There's no contradiction. If we simply apply the words of this statute, we have to conclude that these defendants do have full immunity under the federal law. Is this a is this a result that Congress might have contemplated? That is simply irrelevant whether Congress contemplated it or not. In that respect, we would invite the court's attention to the decision of the United States Supreme Court in Pennsylvania Department of Corrections versus Yesky. In that case, the court held that state prison inmates come within the protection of the Americans with Disabilities Act. And the court declared, in a unanimous opinion authored by Justice Scalia, assuming that Congress did not envision that the ADA would be applied to state prisoners in the context of an unambiguous statutory text, that is irrelevant. As we have said before, the fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth. And what we have here is a statute that is literally breathtaking in its breadth. And there is no reason to read in limits that would abolish the immunity itself. When the lower court said, well, this is inconsistent with the with the Federal Controlled Substances Act, the officers have to be engaged in enforcing a law that's consistent with the Controlled Substances Act. Well, that's saying the grant of immunity is meaningless. We'll give you immunity as long as you're complying with the law, if you don't violate the law. Well, the grant of immunity assumes the violation of the law. The whole purpose of the grant of immunity is to say to state officers, you can violate federal law, and you are immune from civil or criminal liability for doing so. And that's precisely the situation that's presented by this case. I think we have your argument at hand. Do you want to save some time for rebuttal? Yes, thank you. Very good. Counsel. Judge Thomas, may it please the Court. My name is Mark Quinlivan, and I represent the United States in these appeals. I think that the immunity argument was squarely foreclosed by this Court in its decision in Rosenthal. And I would point out that in Rosenthal, this Court was considering the very same Oakland ordinance upon which the OCBC defendants rely in this case. Moreover, Mr. Rosenthal was providing the marijuana in question to the very club at issue in this case, the Oakland Cannabis Buyers Cooperative. It was in that very context in which this Court considered the statutory immunity argument. And what this Court held is that that ordinance does not compel anyone to enforce state law, and therefore it doesn't come within the terms of the statute. And in the alternative, this Court agreed with Judge Breyer's conclusion in the Rosenthal case that the very same argument upon which the OCBC defendants rely here would contradict the very purpose of the Controlled Substances Act. So let's take a hypothetical. Let's assume that, in fact, the Oakland ordinance said we're going to enforce the law by requiring police officers to manage and supply this to cannabis users. Would you believe that the police officer would have immunity? I don't think he would. And I think that even to the extent that that somehow could be viewed, perhaps, as now coming within enforcing the Oakland ordinance, it would still contradict the very purpose of this Controlled Substances Act. And I would point this Court to the preemption statute which Congress enacted, which is 21 U.S.C. section 903. It said that Congress didn't mean to occupy the field unless there is a positive conflict between federal and state law, and that would be the situation that you would have. It's one thing if you have a state officer who was, say, making a controlled purchase of a controlled substance, because in that instance both the state law and the federal law would be in accord. But when you have a state law that contradicts what federal law provides for, then that officer would fall within the purview of section 903. And, indeed, I note that I think that my brother has even conceded that the alternative argument that this Court rendered in Rosenthal, which is that this argument would contradict the very purpose, they just disagree with that conclusion by this Court. But that doesn't get around this Court's longstanding rule regarding stare decisis. They haven't identified any intervening Supreme Court, Ninth Circuit en banc or change in the statutory law. So the statutory immunity argument is squarely foreclosed by this Court's decision in Rosenthal. There's some force to the argument that one doesn't need immunity unless one is committing a violation of the law. So the argument goes, as you heard, that that's the premise. It doesn't matter what Congress was intending. Certainly Congress wanted to prohibit these activities, but it granted immunity for a reason. And it was presuming that some state officials might be in technical violation of the law. Well, certainly I think what they obviously had in mind was what I was suggesting, a law enforcement officer who was, in fact, violating both perhaps State and Federal law by making a controlled purchase. But the statute itself also talks about lawfully engaged. And as Judge Breyer both concluded in this case and in the Rosenthal case, that has to be read in connection with Section 903. And one can't be lawfully engaged when one is, in fact, violating Federal law as well. Now, I would point this Court, the citation to the recent authority. All this Court has to do is look at pages 31 and 32 of the California Court of Appeals decision. The California Court of Appeals made clear that the State law did not purport to alter in any way what Federal law prohibits, nor could it, because then you would deal with the kind of preemption problem that the Supreme Court made clear in Oakland cannabis, that there, in fact, is no common law defense to medical necessity defense, because Federal law flatly prohibits the distribution and manufacture of marijuana absent very limited circumstances. So this argument, it was addressed by the district court both in this case and in the Rosenthal. We would suggest there's just no there to this argument. Your Honor, I'd be happy to address any of the other arguments that have been raised in any of the briefs. I'll tell you what I'd like you to address. I know you have an injunction here, and I take it it's permanent. But the amicus brief and the briefs of the appellee all say that the government has been stonewalling with respect to scientific research as to the possible medical uses of marijuana. And I thought that the brief made a rather compelling argument, and I'm wondering what you have to say about that, and if there is some basis for this, whether or not not to be considered on a remand of the district court, to determine whether the injunction ought to be limited in some way to at least induce, if not force, the government to proceed with some speed in reviewing the administrative matters before it. I'd be happy to answer that question, Judge Bright. I think I have three responses. First off, that argument was never advanced by any of the defendants in this case, that there should be some form of limited or narrowed injunction because of what they assert to be delays in allowance of federal research. But more to your point, there is, and we've noted in our brief, a federal rescheduling process. And we address it primarily in connection with the rational basis argument. But what the Eighth Circuit said in the Fogarty case and the Second Circuit said in the Kiffer case, and what this Court said in Miravan, all in rejecting rational basis challenges, is the very existence of this flexible process for rescheduling drugs when there are changes in scientific and medical evidence itself ensures the continued rationality. Now, they do make the argument, of course, that the federal government has been stonewalling, but there are available mechanisms within the administrative process for the defendants to make challenges. They could, for example, if there's a rescheduling petition that they think the federal government hasn't acted on, they have the ability under the APA to bring suit for agency action that's unreasonably delayed. They can, of course, and they have always had the right to file their own petition to reschedule marijuana. I note that we're just one month away from the 10th anniversary from when these cases were first filed in January of 1998, and yet not one of the defendants in this case has filed a petition to reschedule marijuana, notwithstanding what they say is the clear and overwhelming evidence of its medicinal value. Now, what the federal government has done most recently is the government denied the most recent rescheduling petition. It was pursuant to the statute, referred to the FDA for a scientific and medical evaluation, and the then Surgeon General, David Satcher, recommended that marijuana remain in Schedule I and the petition be rescheduled. The petition was therefore denied. So I would suggest that it's not in the province of this Court to make those kinds of judgments. There is an existing administrative process by which those very challenges can be made with review under 21 U.S.C. Section 877 in the Court of Appeals to ensure against arbitrary governmental action. And once again, although we see and there's been a lot of ink spilled about what they claim to be the federal government's defects and the overwhelming medical evidence, the FDA to date has not found marijuana to be safe and effective. The DEA has not rescheduled marijuana, and those decisions have all been upheld when challenged by the D.C. Circuit. And let me just add one further comment on that, Judge Bright, and that is this. The available administrative process is eminently rational because it allows for the development of an administrative record for a court to review. In this case, by contrast, the defendants are essentially asking this Court to make its own determination of what the current state of the medical and scientific evidence is. And what, for example, we cited in our brief, the Sixth Circuit in the Burton and the Green cases, and the Eleventh Circuit in the Middleton case, and what Judge Breyer said in this case, is that Congress has provided an available mechanism, and if one wants to challenge the scheduling of marijuana, then one has to go through that process. But one can't bring it in the context whether it be a rational basis challenge or any other form. And once again, both this Court and every other court of appeals has determined that because there is the existence of this administrative rescheduling process, whether you look at the system as a whole or marijuana specifically, it easily satisfies the rational basis test. Any further questions of the panel? Thank you, Counsel. Thank you, Your Honor. Professor? Your Honors, I think it's important to look back at what Congress had in mind in enacting such a broad immunity clause and in enacting the anti-preemption clause of the Controlled Substances Act. Congress was legislating in an area that traditionally and historically had been the domain of the states. The states have always retained as part of their police powers to assist in the health and safety of their citizens, to regulate the medical profession, and so on. So Congress clearly had in mind that states would continue to legislate in this area and would be free to do so, even if regulations were not consistent with the federal regulations. States have Controlled Substances Act parallel to the Federal Controlled Substances Act, but they don't agree on how every drug under the law should be classified. There are state laws that put drugs on different schedules than the federal schedule. And all of that doesn't create any contradiction or inconsistency. The state law is applied by the state, the federal law is applied by the federal government. We believe that the interpretive principle of Gregory v. Ashcroft applies here, because in enacting the anti-preemption clause and the immunity clause, Congress was deferring to this traditional sovereign power of the states, and the government is now arguing an interpretation that would strip the state of that independent sovereign power. So they have to show that that was Congress's unmistakably clear intent. Now, the suggestion that our argument is squarely foreclosed by Rosenthal, I think if you look at Rosenthal, clearly the holding of the case is simply that one who is engaged merely in cultivation does not come within the immunity clause because he is not engaged in the enforcement of the state law, compelling compliance with the law. The additional comments that the Court made in Rosenthal essentially were dicta, and in fact were identified as such by the Fourth District Court of Appeal opinion that we've given to Your Honors today. In footnote 4 of that opinion, the Court says in Rosenthal the Court suggested in dicta that federal immunity will not attach if the state law being enforced contradicts federal law. And the Court notes that this dicta is simply incorrect, that there is no contradiction between the federal law and the state law. What we're proposing here is a very narrow exception. This is not going to open the door to free distribution and possession of medicinal marijuana. Possession by the patients would still remain illegal. They are not officers under the state law. If the federal government wants to use the majesty of the federal law to put dying cancer patients and AIDS patients in jail, they are free to do so. But we are saying if the state or the municipal government has the courage to stand up for the medical needs of their citizens and enact a state or a city program, they are free to do so, and the officers who administer that program are immune from prosecution under federal law. And believe me, there are a number of cities and states that have that courage. In fact, the state of New Mexico right now is drawing up plans for a state-operated medicinal marijuana distribution system. Finally, I want to address the question that Judge Bright presented to Mr. Quinlivan. When this case was remanded from the United States Supreme Court, the district court was instructed to balance the equities that it was required to look at the need for injunctive relief as opposed to the other alternatives that the government had available. Among those equities is the stonewalling of the federal government with respect to advancing research as to the medicinal qualities of marijuana. And we contend that that is a relevant consideration that the lower court never looked at, and they never looked at all of the other factors that, from our point of view, balance the equities away from injunctive relief because of the denial to us of all of the procedural protections of a criminal prosecution. Using an injunction is a very rare step by the federal authorities. But we have to note that the only authority they have to do so comes from the Controlled Substances Act itself, and they would be immune from all civil or criminal liability under the Controlled Substances Act. So they would be immune from injunctive relief as well. With respect to the pending petition to reclassify marijuana, page 27 of our reply brief points out that there is a petition pending. It's been pending since 2003. We are parties to that petition, but nothing essentially has happened with it. If there are no further questions, I will submit.
judges: Bright , Farris, Thomas